**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

LAURA HOLMAN,                                    *

     Plaintiff,                                    *

     v.                                             *        Civil No.   21-112-BAH

GREYHOUND LINES, INC., et al.,                   *

     Defendants.                                   *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**<u>MEMORANDUM OPINION</u>**

Pending before the Court are five matters related to a motor vehicle tort action involving Plaintiff Laura Holman (hereinafter "Plaintiff") and Co-Defendants Greyhound Lines, Inc. (hereinafter "Greyhound") and Just on Time Freight Systems, Inc. (hereinafter "JOT").  Three motions specifically relate to a *pro rata* settlement reached between Plaintiff and Greyhound: JOT's motion to preclude or in the alternative set aside settlement, ECF 49 (hereinafter "JOT's Motion to Preclude Settlement"), Greyhound's opposition to JOT's Motion to Preclude Settlement and motion to dismiss JOT's crossclaims, ECF 54 (hereinafter "Greyhound's Motion to Dismiss"), and Greyhound's motion for sanctions, ECF 55 (hereinafter "Greyhound's Motion for Sanctions") (collectively, "Settlement-Related Motions").  The remaining two motions relate to discovery: Greyhound's motion for leave to file expert witness disclosure, ECF 42 (hereinafter "Greyhound's Motion for Leave"), and JOT's motion to strike Plaintiff's untimely expert report, ECF 45 (hereinafter "JOT's Motion to Strike Expert Notice") (collectively, "Discovery-Related Motions").  All filings included memoranda of law, some of which included exhibits.[1]  I have

---

[1] The Court references all filings by their respective ECF numbers.

reviewed the pending motions and all related papers and find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021).

For the reasons set forth below, JOT's Motion to Preclude Settlement, ECF 49, is **DENIED**; Greyhound's Motion to Dismiss, ECF 54, is **GRANTED IN PART** and JOT's crossclaim for indemnification, ECF 24, is **DISMISSED**; and Greyhound's Motion for Sanctions, ECF 55, is **DENIED**. Additionally, pursuant to Rule 12, the Court converts the portion of Greyhound's Motion to Dismiss, ECF 54, relating to JOT's crossclaim for contribution, to a motion for summary judgment based on a settlement agreement. Fed. R. Civ. P. 12(d). JOT's crossclaim for contribution, ECF 24, remains pending for ten (10) days after the entry of this Memorandum Opinion to give the parties notice and an opportunity to be heard and, absent a showing that JOT should prevail, the Court intends to grant Greyhound's Motion to Dismiss and dismiss JOT's crossclaim for contribution. Furthermore, pursuant to Rule 56, the Court intends to enter summary judgment as to Greyhound's crossclaims, ECF 20, against JOT. Fed. R. Civ. P. 56(f). Finally, given the Court's rulings on the Settlement-Related Motions, the Court invites all parties to show cause within ten (10) days of the entry of this Memorandum Opinion as to why the Discovery-Related Motions are not **MOOT**.

## I.   RELEVANT BACKGROUND

This case arises out of a May 23, 2019, vehicle collision on southbound I-95 in Cecil County, Maryland. Compl. 2, ECF 3. Plaintiff was a passenger on a Greyhound bus that was allegedly travelling above the posted speed limit. *Id.* An eighteen-wheel tractor trailer owned and operated by JOT "attempted, without proper warning, to make an unsafe and illegal lane change" into the path of the bus. *Id.* at 3. The bus swerved to avoid a collision with the JOT tractor trailer and left the roadway. *Id.* Plaintiff was "forcefully thrown or propelled" from her seat and suffered

injuries to "her [h]ead, knee[,] and shoulder." *Id.*  Plaintiff sued Greyhound and JOT in state court alleging negligence. *Id.* at 3–7.

On January 31, 2021, Greyhound removed this action to federal court alleging diversity jurisdiction.  Notice of Removal 1, ECF 1.  On March 8, 2021, Greyhound filed a crossclaim against JOT seeking contribution and indemnity.  Greyhound's Crosscl., ECF 20.  On March 19, 2021, JOT responded with crossclaims of its own against Greyhound based on the same theories. JOT Crosscls., ECF 24.  All parties timely responded and discovery began.

After the parties were granted three extensions of time to complete discovery, Greyhound filed a motion on March 17, 2022, seeking permission to file an expert disclosure after the Court's deadline to do so had passed. *See* Greyhound's Mot. Leave, ECF 42.  JOT opposes this request. *See* JOT's Opp'n to Greyhound's Mot. Leave, ECF 46.  JOT, in turn, filed a motion to strike Greyhound's expert disclosure. *See* JOT's Mot. Strike Expert Notice, ECF 45.  Plaintiff filed an opposition to that motion, Pl.'s Opp'n to JOT's Mot. Strike, ECF 50, to which JOT replied, JOT's Reply to Pl.'s Opp'n, ECF 56.

While discovery was still pending, the parties engaged in an unsuccessful settlement conference in late December 2021.  Greyhound's Mem. Supp. Mot. Dismiss 2, ECF 54-1.  With litigation costs mounting, *see id.*, and the relationship between the parties growing more acrimonious, *see* JOT's Mot. Strike Expert Notice 1, ECF 45, Greyhound and Plaintiff began to pursue settlement more aggressively.  Greyhound's Mem. Supp. Mot. Dismiss 2–3, ECF 54-1.  On March 29, 2022, Plaintiff and Greyhound "entered into a *pro rata* settlement agreement whereby Greyhound stipulated it was one, active joint tort-feasor and Plaintiff stipulated that any remaining claim against JOT would be reduced to the extent of the *pro rata* share of Greyhound pursuant to Maryland Code Ann., Cts. & Jud. Proc. §3-1401 et seq." Greyhound's Mot. Dismiss ¶ 3, ECF 54;

*see also* Greyhound's Mot. Dismiss, Ex. C, ECF 54-4 ("Confidential Joint Tortfeasor Release and Settlement of All Claims") (hereinafter the "Settlement").

On April 11, 2022, JOT moved for this Court to "preclude or in the alternative set aside" the Settlement.  Mot. Preclude Settlement 1, ECF 49.  JOT objects to the Settlement on the ground that it represents "plain legal prejudice" to JOT.  *Id.* at 4.  More specifically, JOT alleges that the Settlement "will interfere with [JOT]'s ability to seek contribution or indemnification at trial" and will "potentially render [two Greyhound-affiliated] witnesses" — the bus's driver and a corporate representative — "unavailable to testify at trial," presumably because Greyhound will no longer call the witnesses at trial and both witness "are out of state and are unlikely to appear for trial." *Id.* at 8.

Plaintiff filed an opposition to JOT's Motion to Preclude the Settlement, Pl.'s Opp'n to Mot. Preclude Settlement, ECF 52, to which JOT filed a reply, JOT's Reply to Pl.'s Opp'n, ECF 57.  Greyhound also opposes JOT's Motion to Preclude Settlement and moves to dismiss JOT's crossclaims against Greyhound, ECF 24, because the Settlement "extinguish[es]" JOT's claim for contribution and because JOT's "claim for implied indemnity against Greyhound fails as a matter of law."  Greyhound's Mot. Dismiss 2, ECF 54.

Furthermore, Plaintiff and Greyhound counter that JOT lacks standing to challenge the Settlement because "[m]ere allegations of injury in fact or tactical disadvantage as a result of a settlement simply do not rise to the level of plain legal prejudice."  Pl.'s Opp'n to Mot. Preclude Settlement 3, ECF 52-1; Greyhound's Mem. Supp. Mot. Dismiss 13, ECF 54-1 (citing *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992)).  Regardless, Greyhound and Plaintiff aver that the Settlement comports with the Maryland Uniform Contribution Among Joint Tort-feasors Act, Md. Code Ann., Courts and Judicial Proceedings, § 3–1401 et seq. (hereinafter

"UCAJT"), and therefore, JOT's contribution claim against Greyhound must be dismissed. Greyhound's Mem. Supp. Mot. Dismiss 6, ECF 54-1.  Greyhound notes that JOT suffers no harm or prejudice because "in the event any judgment is entered against JOT, JOT will receive the benefits of reduction as provided in the [Settlement] negotiated by Greyhound."  *Id.* at 9; *see also* Pl.'s Mem. Supp. Opp'n to JOT's Mot. Preclude Settlement 3–4, ECF 52-1 ("JOT is not prejudiced by this settlement, as it is receiving an automatic reduction for 50% of any judgment, regardless of its size, entered against it at trial.").

JOT filed a response to Greyhound's Motion to Dismiss.  JOT's Reply & Opp'n to Greyhound's Mot. Dismiss, ECF 58.  JOT argues that Greyhound's motion is untimely.  *Id.* at 9. JOT also appears to allege that dismissal is not warranted because the Settlement is not signed and because Plaintiff has not formally dismissed Greyhound from the case.  *Id.* at 12–13.

Finally, Greyhound seeks sanctions against JOT for all costs "related to responding to [JOT's Motion]."  Mot. Sanctions 2, ECF 55.  Greyhound avers that JOT has filed challenges to the Settlement that are "not warranted by existing law," "lack[] merit[,] and are being maintained in bad faith."  Greyhound's Mem. Supp. Mot. Sanctions 8, ECF 55-1.  Greyhound asks this Court "to deter [JOT] from maintaining and filing meritless and harassing litigation by ordering it to pay all of Greyhound's attorney's fees and other expenses" incurred responding to JOT's motions.  *Id.* JOT did not respond to Greyhound's request for sanctions.

## II.  <u>ANALYSIS</u>

This matter was removed to federal court pursuant to 28 U.S.C. § 1441(b) after JOT invoked diversity of citizenship jurisdiction under 28 U.S.C. § 1332. *See* Notice of Removal 1, ECF 1.  "When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state."

*Ground Zero Museum Workshop v. Wilson*, 813 F.Supp.2d 678, 696 (D. Md. 2011)).  Here, Maryland is the forum state and thus the parties agree that Maryland law governs the instant dispute.  *See* Greyhound's Mem. Supp. Mot. Dismiss 6, ECF 54-1 (citing *LaChance v Service Trucking, Co.*, 215 F.Supp. 162, 164 (D. Md. 1963)); Pl.'s Mem. Supp. Opp'n to JOT's Mot. Preclude Settlement 3, ECF 52-1 (citing Maryland law); JOT's Mem. Supp. Mot. Preclude Settlement 4–7, ECF 49-1 (same).

### A.  JOT's Motion to Preclude or Set Aside Settlement

#### 1.  The Settlement Agreement

Greyhound and Plaintiff have entered into a valid *pro rata* settlement under the UCAJT. *See* Settlement, Ex. C, ECF 54-4.  "At common law . . . the release of one joint tortfeasor released all other potentially liable parties." *Rivera v. Prince George's Cty. Health Dep't*, 102 Md. App. 456, 476 (1994) (citing *Gunther v. Lee*, 45 Md. 60, 67 (1876)).  This common law rule changed with the ratification of the UCAJT.  *See* Md. Code Ann., Cts. & Jud. Proc. §§ 3-1401, 3-1402; *see also Loh v. Safeway Stores, Inc.*, 47 Md. App. 110, 126–27, 422 A.2d 16, 26 (1980) ("We conclude, further, that the [UCAJT] abrogated the common law rule that a release of one joint tortfeasor released all . . . .") (citations omitted).

The UCAJT codified the equitable doctrine of contribution.  *See Mercy Med. Ctr. v. Julian*, 429 Md. 348, 355, 56 A.3d 147, 151 (2012) (noting that the UCAJT was passed "to enable a statutory abrogation of the common law bar on contribution . . . .").  Contribution provides "for the distribution of loss among culpable parties in accordance with their proportionate shares." *Hartford Acc. & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md. App. 217, 280, 674 A.2d 106, 137 (1996), *aff'd*, 346 Md. 122, 695 A.2d 153 (1997).  As set forth in the UCAJT, "the right of contribution exists among joint tort-feasors."  UCAJT § 3-1402(a).  "Joint tort-feasors"

are defined under the UCAJT as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." *Id.* at § 3-1401(c). "Tort-feasor status, in the absence of adjudication, generally rests on admission by the purported tort-feasor of such status." *Hollingsworth & Vose Co. v. Connor*, 136 Md. App. 91, 140, 764 A.2d 318, 344 (2000). "Thus, a party will be considered a joint tort-feasor when it admits joint tort-feasor status in a settlement agreement . . . ." *Id.* (citing *Martinez v. Lopez*, 300 Md. 91, 100–01, 476 A.2d 197, 202 (1984)).

The UCAJT was enacted to "encourage settlements by allowing a plaintiff to maintain his claim against a non-settling joint tort-feasor when he settles with another joint tort-feasor and signs a release." *Jacobs v. Flynn*, 131 Md. App. 342, 369, 749 A.2d 174, 188 (2000) (citing *Loh*, 47 Md. App. at 117–18). Under the UCAJT, "the release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides . . . ." UCAJT § 3-1404. Instead, "it reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid." *Id.* Moreover, the UCAJT states that:

> [a] release by the injured person of one joint tort-feasor does not relieve the joint tort-feasor from liability to make contribution to another joint tort-feasor unless the release:
>
> (1) Is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued; and
>
> (2) Provides for a reduction, to the extent of the *pro rata* share of the released tort-feasor, of the injured person's damages recoverable against all other tort-feasors.

*Id.* at § 3-1405; *see also Martinez*, 300 Md. at 100–01 ("Where there are two joint tortfeasors and the plaintiff has released one, the latter is not thereby relieved from liability to pay contribution

unless the right of the nonsettling defendant to collect contribution has not yet accrued and the settling defendant obtains a release in which the plaintiff agrees to reduce damages against the nonsettling defendant by the *pro rata* share of the released tortfeasor."). In sum, the "[UCAJT] thus allows a defendant in a tort action to settle its liability with the plaintiff in a way that eliminates any future obligation of the defendant to make contribution to other defendants who choose to litigate liability." *Julian*, 429 Md. at 382, 56 A.3d at 167 (McDonald, J., concurring).

Plaintiff and Greyhound jointly proffer that they have reached an agreement that comports with the UCAJT.  *See* Settlement, Ex. C, ECF 54-4.[2]   The Settlement provides, in relevant part, that Greyhound[3] (the "Released Party") will pay Plaintiff (the "Releasing Party") $250,000 in exchange for the full release of Greyhound for damages caused by the May 23, 2019 bus accident (the "Occurrence").  *Id.* at ¶ 1.  Greyhound, "for the purposes of the instant lawsuit," agrees to "admit to being [a] joint tortfeasor . . . ."  *Id.* at ¶ 2.  The agreement further notes:

> This Release constitutes a comprehensive release of all claims against the Released Parties only. **If another lawsuit has been or will be filed, or if another claim has been or will be made, by the Releasing Parties out of the Occurrence against any other person, firm or corporation other than a party released under this Release, the Releasing Parties irrevocably consent that said claims against any party not released by this Release shall be reduced to the extent of the pro rata share of the Released Parties or by the amount paid under this Release, whichever is greater, pursuant to the**

---

[2] An unsigned version of the Settlement was filed on the docket.  *See* Settlement, ECF 54-4. Though the attached copy is not formally executed, the Court accepts the representations of Plaintiff and Greyhound that the agreement has been ratified.  *See* Greyhound's Mot. Dismiss ¶ 3, ECF 54 ("On March 29, 2022, Plaintiff and Greyhound entered into a pro rata settlement agreement whereby Greyhound stipulated it was one, active joint tort-feasor and Plaintiff stipulated that any remaining claim against JOT would be reduced to the extent of the pro rata share of Greyhound pursuant to Maryland Code Ann., Cts. & Jud. Proc. §3-1401 et seq."); Pl.'s Mem. Supp. Opp'n to JOT's Mot. Preclude Settlement 3, ECF 52-1 3 (stating same); *see also* Greyhound's Mem. Supp. Mot. Dismiss 3 n.1, ECF 54-1 ("Counsel to the parties entering into this Release have stipulated that, although as of yet unsigned, the language and terms of the Release remain unchanged.").

[3] The release also includes both a related entity and the driver of the bus as "Released" parties. Settlement ¶ 2, Ex. C, ECF 54-4.

**Maryland Uniform Contribution Among Joint Tort-Feasors Act ("Act") (Maryland Code Ann., Cts. & Jud. Proc. §3-1401 et seq.),** and that such reduction shall occur whether or not any or all of the parties released under this Release are determined to be joint tort-feasors with the parties not so released, and that this Release may be introduced into evidence before any tribunal by any party in order to establish consent to the reduction pursuant to the Act.

*Id.* (emphasis added). Stated plainly, "pursuant to the proposed settlement between Plaintiff and Greyhound, Greyhound [admits] its status as a joint tort-feasor and JOT [gains] the benefit of a *pro rata* credit for any judgment entered against it at trial." Pl.'s Mem. Supp. Opp'n to JOT's Mot. to Preclude Settlement 3, ECF 52-1.

Further, Greyhound admits it is a joint tortfeasor for the limited purpose of the Settlement. *See Julian*, 429 Md. at 369 ("In the absence of an adjudication that the released party is liable as a joint tort-feasor, a release has only evoked the Act, so as to extinguish contribution liability, when it has included an admission of the released defending party's joint tort-feasor status."). The release of Greyhound noted therein was "given before the right of [JOT] to secure a money judgment for contribution has accrued" and "[p]rovides for a reduction, to the extent of the *pro rata* share of [Greyhound], of [Plaintiff's] damages recoverable against all other tort-feasors." UCAJT, § 3-1405. As such, the Settlement comports with the requirements of the UCAJT.

### 2. JOT Lacks Standing to Object to the Settlement Agreement

"In ordinary litigation, that is, lawsuits between private parties, courts recognize that settlement of the dispute is solely in the hands of the parties." *Gardiner v. A.H. Robins Co.*, 747 F.2d 1180, 1189 (8th Cir.1984) (citing *United States v. City of Miami*, 614 F.2d 1322, 1330, n.16 (5th Cir.1980)). "The general rule, of course, is that a non-settling party does not have standing to object to a settlement between other parties." *Agretti*, 982 F.2d at 246. "However, in multi-party lawsuits, non-settling defendants often seek the court's intervention to invalidate or alter partial settlements." *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1232 (7th Cir.1983). The parties here

9

agree that "[t]here is therefore a recognized exception to the general principle barring objections by non-settling defendants to permit a non-settling defendant to object where it can demonstrate that it will sustain some formal legal prejudice as a result of the settlement." *See* JOT's Mem. Supp. Mot. Preclude Settlement 4, ECF 49-1 and Greyhound's Mem. Supp. Mot. Dismiss 13, ECF 54-1 (both citing *Alumax Mill Prod., Inc. v. Cong. Fin. Corp.*, 912 F.2d 996, 1002 (8th Cir. 1990)); Pl.'s Mem. Supp. Opp'n to JOT's Mot. Preclude Settlement 3, ECF 52-1 (citing *Agretti*, 982 F. 2d at 247).

Although some courts analyzing legal prejudice "speak rather broadly of 'prejudice' to the 'rights' of the non-settling defendants, a careful analysis of the actual results reached in these decisions reveals that non-settling defendants have standing only when the settlement would alter their formal, legal rights." *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1387 (D. Md. 1983). "In particular, non-settling defendants do have standing to object to proposed court approval of a settlement which would bar their rights of contribution and indemnity from settling defendants." [4] *Id.*; *see also Agretti,* 982 F.2d at 247 ("A party also suffers plain legal prejudice if the settlement strips the party of a legal claim or cause of action, such as a cross-claim or the right to present relevant evidence at trial.").

JOT objects to the Settlement on the ground that it "will result in plain legal prejudice" in two ways because it will "interfere with [JOT's] ability to seek contribution or indemnification at trial." JOT's Mem. Supp. Mot. Preclude Settlement 4, ECF 49-1. JOT also claims prejudice because "the driver of the Greyhound Bus . . . and Greyhound's Corporate representative . . . are

---

[4] The Court recognizes that this is not a case where the Court must approve a settlement. *See* Fed. R. Civ. P. 23(e); *see also Lynn's Food Stores v. United States*, 679 F.2d 1350, 1355 (11th Cir.1982). However, since JOT has moved this Court to intervene and effectively approve a settlement between parties, these cases are nonetheless instructive.

crucial trial witnesses and the . . . [Settlement] . . . would potentially render these witnesses unavailable to testify at trial." *Id.* Both objections are without merit.

   i. *The Settlement Agreement's Impact on JOT's Crossclaim for Contribution.*

  JOT is correct that its crossclaim for contribution will not survive the enforcement of the Settlement. *Id.* at 6. However, this does not constitute plain legal prejudice as this is the exact result of a settlement that comports with UCAJT § 3-1405. *See Adams v. NVR Homes, Inc.*, 135 F. Supp. 2d 675, 709 (D. Md. 2001), *on reconsideration*, 142 F. Supp. 2d 649 (D. Md. 2001) ("Since the circumstances of this case satisfy the requirements of Section 3–1405 [of the UCAJT], the [non-settling defendants'] right of contribution asserted against the [settling defendants] has been extinguished."); *Julian*, 429 Md. at 369. JOT points to no authority, and the Court has not found any on its own, that stands for the proposition that "formal legal prejudice" exists when a claim for contribution is extinguished by a settlement that comports with UCAJT § 3-1405. This is unsurprising since a compromise of the kind at issue here is designed to promote fair settlements by protecting the rights of all parties, including those who settle *and* those who do not. *Hollingsworth & Vose Co. v. Connor*, 136 Md. App. 91, 139, 764 A.2d 318 (2000) (citing *Owens–Illinois, Inc. v. Armstrong*, 326 Md. 107, 126, 604 A.2d 47 (1992) (noting that a non-settling defendant is protected by that fact that "[t]he amount recoverable from the non-settling defendant plus the amount recoverable from the settling defendant cannot exceed the plaintiff's verdict."). Though JOT's cross claim for contribution will fail, this does not represent "legal prejudice," as it is precisely the result envisioned under the UCAJT.

  Moreover, as Plaintiff and Greyhound point out, the Settlement provides JOT with the legal remedy it seeks in its contribution crossclaim, as the Settlement explicitly mandates that the potential recovery for all "claims against any party not released by [the Settlement]," specifically JOT, "shall be reduced to the extent of the *pro rata* share of the Released Parties or by [$250,000],

whichever is greater."  Settlement ¶¶ 1, 2, Ex. C, ECF 54-4. This is precisely the remedy JOT

seeks in its crossclaim.[5] The extinguishing of a crossclaim for contribution by a settlement

agreement that comports with UCAJT § 3-1405 does not establish legal prejudice.

JOT incorrectly argues that *State of Maryland v. Philip Morris, Inc.* compels a contrary

finding.  JOT's Reply to Greyhound's Mot. Dismiss 16, ECF 58 (citing 225 Md. App. 214, 246,

123 A.3d 660, 679 (2015)).  That case addressed issues related to a master settlement agreement

between cigarette manufacturers, states, and territories, including Maryland.  *Id.*  The Maryland

Court of Special Appeals was tasked with evaluating whether the trial court erred in refusing to

vacate an arbitration panel's award adopting a *pro rata* judgment-reduction that directly impacted

Maryland, even though Maryland was not in agreement with the reduction.  *Id.*  On its face, *Philip*

*Morris, Inc.* is inapposite since the reduction in payments in that case adversely affected the "non-

settling" defendant (Maryland), whereas the instant case reveals that the non-settling defendant

(JOT) unquestionably reaps the benefit of a *pro rata* reduction in any judgement entered against it

at trial.  *See* Pl.'s Mem. Supp. Opp'n to JOT's Mot. Preclude Settlement, ECF 52-1.  Regardless,

the Court of Special Appeals has made clear that *Philip Morris, Inc.* is limited in scope and only

"stands for three relevant principles: (1) the scope of an arbitrator's authority is defined by contract,

(2) an arbitrator may not read an unambiguous provision out of a contract; and (3) when arbitrators

do so, [the law] authorizes courts to vacate the award because they have exceeded their powers."

*B & S Inc. v. TC Shopping Ctr., LP*, No. 1543, Sept. Term, 2015, 2017 WL 5513257, at *10 (Md.

Ct. Spec. App. Nov. 17, 2017) (citing *Philip Morris*, 225 Md. App. at 240).  Though "[a]ll of these

---

[5] As Greyhound aptly notes, JOT's second crossclaim demands the exact result achieved by the
Settlement, namely "contribution from Greyhound for a pro-rata sum of any settlement or
judgment, pursuant to applicable provisions of the Maryland Uniform Contribution Among Joint-
Tortfeasors Act."  Greyhound's Mem. Supp. Mot. Dismiss, ECF 54-1 (referencing ECF 24, 2 at ¶
11).

propositions are unquestionably correct . . . none of them affects the outcome of the present case," since this matter does not implicate the scope of an arbitrator's authority. *Id.* Therefore, the impact on JOT's crossclaim for contribution does not constitute legal prejudice.

> ### ii. *The Settlement Agreement's Impact on JOT's Crossclaim for Indemnification.*

JOT incorrectly claims that the Settlement will "extinguish" JOT's claim for "indemnification." JOT's Mem. Supp. Mot. Preclude Settlement 6, ECF 49-1. To the contrary, the Settlement has no formal impact on JOT's indemnification claim. The UCAJT "does not impair any right of indemnity under existing law." UCAJT § 3-1406. To be clear, Greyhound has apparently *asked* JOT to drop its claim for indemnification. *See* Greyhound's Settlement Emails 1, Ex. B, ECF 54-3. Greyhound also moves this Court for the same relief. Greyhound's Mot. Dismiss ¶ 4, ECF 54. However, the Settlement itself makes no reference to this crossclaim and thus JOT has failed to allege "formal legal prejudice" on this ground.

> ### iii. *The Settlement Agreement's Impact on the Availability of Witnesses at Trial.*

JOT also argues that the Settlement may "potentially render [two] witnesses," the Greyhound bus driver and Greyhound's corporate representative, "unavailable to testify at trial." JOT's Mem. Supp. Mot. Preclude Settlement 6, ECF 49-1. JOT alleges that if Greyhound does not call these witnesses, which Greyhound is unlikely to do if it settles with Plaintiff, then both witnesses are "unlikely to appear for trial" because they are "out of state" and beyond the Court's subpoena power.[6] *Id.* JOT concedes that both witnesses have been deposed, but that "live

---

[6] Federal Rule of Civil Procedure 45(c)(1) allows a subpoena to "command a person to attend a trial, hearing, or deposition only . . . (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P.

testimony is preferable to depositions of key witnesses." *Id.* (citing *DeLay & Daniels, Inc. v. Allen M. Campbell Co., Gen. Contractors*, 71 F.R.D. 368, 373 (D.S.C. 1976)).  Greyhound claims that the driver is no longer in its employ and that the corporate representative is not a fact witness, casting doubt on whether Greyhound would call the corporate witness, as well as whether Greyhound is in a better position to secure the testimony of the bus driver than JOT.  Greyhound's Mem. Supp. Mot. Dismiss 9, ECF 54-1.  This is not cognizable legal prejudice.

JOT essentially laments that Greyhound's departure from the case makes JOT's path to victory at trial more difficult.  "Mere allegations of . . . tactical disadvantage as a result of a settlement simply do not rise to the level of plain legal prejudice." *Agretti*, 982 F.2d at 247.  JOT concedes that both witnesses have already been deposed. "The Federal Rules of Civil Procedure make no distinction for use of a deposition at trial between one taken for discovery purposes and one taken for use at trial (*de bene esse*)." *Tatman v. Collins*, 938 F.2d 509, 510 (4th Cir. 1991). "It is irrelevant to the issue that one party or the other initiated the deposition [or] that it was initiated only for discovery purposes . . . ." *Id.* at 511.  "A party may use *for any purpose* the deposition of a witness . . . if the court finds . . . . that the witness is more than 100 miles from the place of hearing or trial . . . unless it appears that the witness's absence was procured by the party offering the deposition[.]" Fed. R. Civ. P. 32(a)(4)(B) (emphasis added).  Assuming the witnesses refuse to appear for trial, and further assuming that JOT did not procure their absence, the testimony of both witnesses can be heard by deposition as is common in courthouses in this District and beyond. *See* Fed. R. Evid. 802 (advisory committee's note identifying Federal Rule of Civil

---

45(c)(1).  Though JOT does not explicitly state where these witnesses are, the Court will assume that each is beyond the 100-mile limits noted in the Rule.

Procedure 32 as an exception to the general rule barring hearsay).  As such, JOT fails to establish legal prejudice on this ground.

For the reasons stated above, JOT's Motion to Preclude Settlement, ECF 49, is denied.

### B.  Greyhound's Motion to Dismiss Crossclaims

Greyhound moves the Court to dismiss JOT's crossclaims for contribution and indemnification.  Greyhound's Mot. Dismiss, ECF 54.  Federal Rule of Civil Procedure 12(b) provides that "[a] motion making any [Rule 12(b)] defenses *shall* be made before pleading if a further pleading is permitted." Fed. R. Civ. P. 12(b) (emphasis added).  JOT is correct that Greyhound's Motion to Dismiss is untimely since it comes over a year after the filing of responsive pleadings.  However, Rule 12(h)(2) provides that the defense of failure to state a claim upon which relief can be granted may be raised by motion for judgment on the pleadings under Rule 12(c).  Fed. R. Civ. P. 12(h)(2)(B).  Therefore, Greyhound's Motion to Dismiss is better viewed as a Rule 12(c) motion for judgment on the pleadings.

Rule 12(c) provides that "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "A Rule 12(c) motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)." *Bierman Fam. Farm, LLC v. United Farm Fam. Ins. Co.*, 265 F. Supp. 3d 633, 637 n.5 (D. Md. 2017).  A court must "construe the facts and reasonable inferences derived therefrom in the light most favorable to the [non-moving party]." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  The factual allegations of the complaint, assumed to be true, "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It is not sufficient that the well-pleaded facts suggest "the mere possibility" of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rather, "a complaint must contain

sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face'"

meaning that the court could "draw the reasonable inference that the [cross-claim defendant] is

liable for the misconduct alleged." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

### 1.  Greyhound's Motion to Dismiss JOT's Crossclaim for Indemnification.

"The distinction between contribution and indemnity is that the former refers to

apportioning damages between joint tortfeasors by requiring each to pay his proportionate share,

while indemnity implies a shifting of the entire loss from the party who paid the judgment to the

tortfeasor who should in fairness bear it." *Greyhound Lines, Inc. v. Cobb Cnty., Ga.*, 681 F.2d

1327, 1332 n.7 (11th Cir. 1982).   "Indemnity requires that, where one of the wrongdoers is

primarily liable, that wrongdoer must bear the whole loss." *Bd. of Trustees of Baltimore Cnty.*

*Cmty. Colleges v. RTKL Assocs., Inc.*, 80 Md. App. 45, 55, 559 A.2d 805, 810 (1989) (citing *Park*

*Circle Motor Co. v. Willis*, 201 Md. 104, 113, 94 A.2d 443 (1952)).   Ordinarily, "[t]he joint tort-

feasors must have had some sort of relationship prior to the tort which justified the claim for

indemnity."   *Id.* (collecting cases).   However, a right to indemnity may arise "where the character

of one tortfeasor's conduct is significantly different from that of another who is also liable for the

same damages." *Pyramid Condo. Ass'n v. Morgan*, 606 F. Supp. 592, 596 (D. Md. 1985).

Since "it is abundantly clear that a defendant may seek indemnification only when its

liability is passive or secondary, which liability is rooted in the concept of imputed or constructive

fault," Greyhound avers that JOT's indemnity claim must be dismissed because this case raises

only allegations of "active" negligence by both defendants.   Greyhound's Mem. Supp. Mot.

Dismiss 11, ECF 54-1 (citing *Pyramid Condo. Ass'n*, 606 F. Supp. at 596).   JOT responds that

dismissal is inappropriate because it can establish that its driver "acted reasonably and prudently

when faced with an emergency situation" and thus, any negligence was only "passive or secondary." JOT's Reply to Greyhound's Mot. Dismiss 15, ECF 58.

JOT mistakes the doctrine of indemnification for that of comparative negligence. Situations where "a party held liable for negligence may pass that liability on to another negligent party [are] closely circumscribed." *Pyramid Condo. Ass'n*, 606 F. Supp. at 595 (citing *Blockston v. United States*, 278 F.Supp. 576, 585 (D. Md. 1968)). "This concept is based on the distinction between 'active' and 'passive,' however, *not on relative degrees of fault*." *Max's Of Camden Yards v. A.C. Beverage*, 172 Md. App. 139, 148–49, 913 A.2d 654, 660 (2006) (citations omitted) (emphasis added). "Any other approach would be inconsistent with the [UCAJT] because it apportions liability among tortfeasors on a *pro rata* basis, not on a relative fault basis." *Id.*

Maryland does not recognize comparative negligence. *See, e.g.*, *Franklin v. Morrison*, 350 Md. 144, 162, 711 A.2d 177, 186 (1998) ("HERE. Thus, "it is well established under Maryland law that one who is guilty of active negligence cannot obtain tort indemnification." *Id.* at 163. For this reason, claims for indemnification between alleged joint tortfeasors in motor vehicle accidents are extremely rare, if not rejected completely as a matter of law. *Id.* at 162 (citing *Hood v. Dealers Transp. Co.*, 472 F.Supp. 250 (N.D.Miss.1979)).

"The determination of whether a tortfeasor's negligence is active or passive must be made by referring to the plaintiff's complaint against the defendant seeking to implead the third party." *Pyramid Condo. Ass'n*, 606 F. Supp. at 596. "If the plaintiff's complaint alleges conduct by the third-party plaintiff that would constitute active negligence, or if it is clear from the circumstances revealed by the plaintiff's complaint that the defendant's (third-party plaintiff) liability would only arise, if at all, from proof of active negligence, there is no basis for an indemnity claim and dismissal of the claim is appropriate." *Id.* (citations omitted).

Here, Plaintiff alleges that both Greyhound and JOT are liable for the negligent operation of motor vehicles. *See* Compl. ¶ 16 (allegation as to Greyhound) and ¶ 25 (allegation as to JOT), ECF 3. Plaintiff claims that "the recklessness, carelessness and negligence" of both JOT and Greyhound "directly and proximately caused" the accident. *Id.* Plaintiff specifically argues that Greyhound's driver was speeding and that JOT's driver "attempted, without proper warning, to make an unsafe and illegal lane change . . . ." *Id.* at ¶¶ 8–9. Collectively, Plaintiff alleges these acts caused the accident that injured Plaintiff. *Id.* at ¶ 11.

Greyhound, through the Settlement, agrees that it was a "joint tortfeasor." Settlement ¶ 2, Ex. C, ECF 54-4. JOT disputes that its driver was negligent and points to numerous exhibits purporting to establish that its driver's decision to abruptly change lanes was made to avoid another incident unfolding on the roadway ahead. *See, e.g.*, JOT's Reply to Greyhound's Mot. Dismiss, Exs. 1–8, ECF 58-1 through ECF 58-8. What Plaintiff (and JOT) describe is not so-called "passive negligence" based on a contractual or quasi-contractual relationship between co-defendants. *Franklin*, 350 Md. at 154. Nor do the allegations claim that "the character of one tortfeasor's conduct is significantly different from that of another who is also liable for the same damages." *Pyramid Condo. Ass'n*, 606 F. Supp. at 595. Instead, it is impossible from the face of the complaint and the crossclaims to "discern any substantial difference between [JOT's] position, or a rule allowing indemnification where there is non-equal negligence, and a tort system of comparative fault." *Franklin*, 350 Md. at 167–68. Since Plaintiff's complaint alleges liability that would "only arise, if at all, from proof of active negligence, there is no basis for an indemnity claim and dismissal of the claim is appropriate." *Pyramid Condo. Ass'n*, 606 F. Supp. at 596. *Franklin v. Morrison* is particularly instructive on this point.

There, a non-settling defendant in a tort action arising out of a tragic automobile accident objected to the trial court's refusal to allow the issue of indemnity to reach the jury. *Id.* at 158. Prior to the accident, the non-settling defendant took his vehicle to Jiffy Lube for routine service. *Id.* at 147. Jiffy Lube failed to properly replace a plug on the vehicle, which later resulted in the leaking of differential fluid that completely disabled the car in the middle of a busy highway. *Id.* A minivan was forced to stop directly behind the disabled vehicle and was struck by a tractor trailer. *Id.* The minivan burst into flames and all three passengers, a mother and her young children, were killed. *Id.* The decedent's surviving spouse sued the driver of the disabled vehicle, Jiffy Lube, and the driver of the tractor trailer. *Id.* One month before trial, Jiffy Lube and the tractor trailer company reached a settlement. *Id.* at 149.

The non-settling defendant argued that his actions – failing to move his disabled vehicle to the side of the roadway and failing to warn other motorists of the obstruction – did not constitute negligence, and, even if so, such negligence was merely "passive" as opposed to the "active" negligence of Jiffy Lube and the tractor trailer driver. *Id.* at 152–53. "At the close of the evidence, the trial court denied, [the non-settling defendant's] motion for judgment on his crossclaim for indemnity against Jiffy Lube. . . . [and], in effect, granted Jiffy Lube's motion for judgment in its favor on [the non-settling defendant's] crossclaim for indemnity against it." *Id.* at 152. The non-settling defendant appealed.

The Court of Appeals for Maryland engaged in a lengthy discussion of indemnity and negligence in Maryland and other jurisdictions. *Id.* at 154–68. Ultimately, the *Franklin* court determined that it could "not discern any substantial difference between [the non-settling defendant's] position, or a rule allowing indemnification where there is non-equal negligence, and a tort system of comparative fault." *Id.* at 168. "We have great difficulty," the court noted,

"understanding how a jury would make the necessary determination of great disparity in fault without assigning percentages of fault to the conduct of the joint tortfeasors or, at a minimum, pigeonholing the conduct of the joint tortfeasors into categories adjectively labeled to represent varying degrees of fault." *Id.*

"In addition, a system of comparative fault for indemnification would be inconsistent with [UCAJT]" because "[t]hat statute apportions the liability among joint tortfeasors on a pro rata basis, without regard to the degrees of fault." *Id.* (citing UCAJT §§ 3–1402 through 3–1405). "Once the determination has been made that two or more parties are joint tortfeasors, [the UCAJT] does not concern itself with the relative degrees of fault between the parties." *Id.* Since the non-settling defendant's alleged negligence arose "out of the operation of his automobile," the Court of Appeals deemed it to be "active, as a matter of law." *Id.* at 163. The Court of Appeals affirmed the trial court as "[i]t is well established under Maryland law that one who is guilty of active negligence cannot obtain tort indemnification." *Id.*

Like the non-settling co-defendant in *Franklin*, JOT contends that it was not negligent or, if so, that it was not *as negligent* as Greyhound because JOT's driver "acted reasonably and prudently when faced with an emergency situation . . . ." JOT's Reply to Greyhound's Mot. Dismiss 15, ECF 58. In essence, JOT is arguing the applicability of the "sudden emergency" or "unavoidable accident" doctrines. *See In State ex rel. Whitaker v. Greaves*, 191 Md. 712, 62 A.2d 630 (1948) (defining an unavoidable accident as "an inevitable occurrence, not to be foreseen and prevented by vigilance, care and attention, and not occasioned or contributed to, in any manner, by the act or omission of the defendant"). Of course, "[w]hether the operator of an automobile was confronted with an emergency, and whether he acted negligently under the circumstances, are generally questions for the jury." *Warnke v. Essex*, 217 Md. 183, 187, 141 A.2d 728, 729 (1958);

*see also Effler v. Webber*, 18 Md. App. 162, 168, 305 A.2d 485, 488 (1973) ("The question of Effler's actions in response to the emergency was clearly a question of fact to be determined by the jury."). The possible applicability of the "sudden emergency" doctrine does not render JOT's alleged negligence "passive," it instead challenges whether JOT was negligent at all. It is clear from the face of the Complaint and the crossclaims that indemnity does not apply to this case. Therefore, Greyhound's Motion to Dismiss Count 1 for indemnification of JOT's Crossclaim, ECF 54, is granted.

### 2. Greyhound's Motion to Dismiss JOT's Crossclaim for Contribution.

JOT's contribution claim cannot survive the Settlement reached between Greyhound and Plaintiff. *See* UCATF § 3-1405*; see also Adams*, 135 F. Supp. 2d at 708. However, Greyhound's Motion to Dismiss rests on the Settlement, a document that falls outside of the pleadings. If a court considers matters outside of the pleadings in ruling on a motion to dismiss, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In that circumstance "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "[T]he term reasonable opportunity requires that all parties be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir.1985) (citations omitted).

Given that the Settlement is the basis of Greyhound's Motion to Dismiss and is attached to Greyhound's pleading, JOT is aware that the Motion to Dismiss may be treated as one for summary judgment. *Gay,* 761 F. 2d. at 177 ("When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment."). JOT has had ample time to seek discovery related to the Settlement and

has fully briefed its opposition to it.  *See* JOT's Mot. Preclude Settlement, ECF 49.  It has also briefed its opposition to dismissal of crossclaims due to the Settlement.  *See* JOT's Reply to Greyhound's Mot. Dismiss, ECF 58.  Nevertheless, to ensure scrupulous adherence to JOT's "right . . . to file counter affidavits or to pursue reasonable discovery" related to the motion, *Gay*, 761 F. 2d. at 177, the Court will permit JOT ten (10) days to provide any additional discovery or arguments relevant to summary judgment on JOT's contribution crossclaim.[7]

### 3.  Greyhound's Crossclaims.

The Court has the authority to grant summary judgment even in the absence of a formal motion.  *See* Fed. R. Civ. P. 56(f).  Greyhound's indemnity claim fails for the same reasons as JOT's identical allegation.  *See supra* Section II.B.1; Greyhound's Crosscl., ECF 20.  Greyhound's crossclaim for contribution also fails pursuant to the UCAJT because the Settlement admits that Greyhound is a tortfeasor and fails to extinguish JOT's liability.  *See* UCAJT § 3-1402(c) ("A joint tort-feasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tort-feasor whose liability to the injured person is not extinguished by the settlement."); *see also Gables Constr., Inc. v. Red Coats, Inc.*, 468 Md. 632, 651, 228 A.3d 736, 747 (2020) ("Red Coats, having entered into a settlement agreement with the injured party, Upper Rock, is only entitled to contribution from "another joint tort[ ]feasor whose liability to the injured person is . . . extinguished by the settlement."); *Julian*, 429 Md. at 381 (McDonald, J. concurring) ("A settling joint tort-feasor is not entitled to contribution from another joint tort-feasor unless the settlement extinguishes the liability of the other tort-feasor.").  Absent a formal

---

[7] The Court intends to consider the Settlement as a basis for summary judgment on JOT's crossclaim for contribution.  As such, the Court permits the parties additional time to present any evidence, including affidavits or documentary evidence, related to the Settlement, so that the Court can determine whether there are material facts related to the Settlement that are in dispute and to decide whether Greyhound is entitled to prevail as a matter of law.

motion by Greyhound to dismiss its crossclaims for contribution and indemnification, the Court intends to enter an order pursuant to Rule 56(f) as to Greyhound's crossclaims, ECF 20, and invites the parties to file any objections within ten (10) days of the entry of this Memorandum Opinion. *See supra* note 7.

### C.  Greyhound's Motion for Sanctions

Greyhound moves the Court to sanction JOT pursuant to Rule 11(c) for the purported filing of motions that are "without merit" and for failing to meaningfully engage in discussions related to Greyhound's settlement with Plaintiff.  Fed. R. Civ. P. 11(c); Greyhound's Mem. Supp. Mot. Sanctions 4, ECF 55-1.  JOT has not responded to the motion.  Rule 11 is designed to punish violators and deter parties, and counsel, from pursuing unnecessary or unmeritorious litigation. *See Cabell v. Petty*, 810 F.2d 463, 467 (4th Cir.1987).  The Court encourages civility and reminds all parties that legal arguments must be non-frivolous.  *See* Fed. R. Civ. P. 11(b)(2).  However, after reviewing JOT's Motion to Preclude Settlement and its attachments, the Court does not find that JOT's actions or filings merit sanctions.   Therefore, Greyhound's Motion for Sanctions, ECF 55, is denied.

### D.  Additional Motions

Also pending before the Court are the two Discovery-Related Motions: Greyhound's Motion for Leave to File Rule 26(a)(2) Disclosure, ECF 42, and JOT's Motion to Strike Greyhound's Expert Notice, ECF 45.  Given that Greyhound has now settled with Plaintiff, the Court asks all parties to show cause, within ten (10) days of the entry of this Memorandum Opinion, as to why these Discovery-Related Motions are not moot and therefore should be denied.

III.    **CONCLUSION**

For the reasons noted above, JOT's Motion to Preclude Settlement, ECF 49, is **DENIED**. Greyhound's Motion to Dismiss, ECF 54, is **GRANTED IN PART** and JOT's crossclaim for indemnification, ECF 24, is **DISMISSED**.  The Court gives notice that it will consider the portion of Greyhound's Motion to Dismiss, ECF 54, addressing JOT's crossclaim for contribution, pursuant to Rule 12(d) and provides the parties ten (10) days from the entry of this Memorandum Opinion to present any additional material relevant to the Motion to Dismiss.  Greyhound's Motion for Sanctions, ECF 55, is **DENIED**.  The Court also notes its intention to enter an order pursuant to Rule 56(f) on Greyhound's pending crossclaims, ECF 20, after providing all parties the opportunity to provide relevant material or arguments within ten (10) days of the entry of this Memorandum Opinion.  Given the Court's ruling on the Settlement-Related Motions, the Court asks all parties to show cause within ten (10) days as to whether the Discovery-Related Motions, ECF 42 and ECF 45, are not **MOOT** and should be denied.  A separate Order follows.


Dated: May 27, 2022                                         /s/
                                                      Brendan A. Hurson
                                                      United States Magistrate Judge