## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LAURA HOLMAN,                                          *

      Plaintiff,                                     *

      v.                                             *          Civil No.   21-0112-BAH

GREYHOUND LINES, INC., et al.,                         *

      Defendants.                                    *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM OPINION

Pending before the Court is a Motion to Intervene (the "Motion") filed by Nicolas Janvier, Yesena Machado, individually and as guardian of Vanessa Machado, Kirsten Steidl, and Andrea Woodley (hereinafter "Intervenors").   ECF 71.   Defendant Just On Time Freight Systems, Inc. (hereinafter "JOT") filed an opposition.   ECF 75.   Intervenors filed a reply.   ECF 76.   I have reviewed these filings and find that no hearing is necessary.   *See* Loc. R. 105.6 (D. Md. 2021).   For the reasons set forth below, the Motion is **DENIED**.

### I.     Relevant Facts

The facts of this case are set forth in the Court's Memorandum Opinion resolving an earlier motion.   ECF 59.   In short, this case arises out of a May 23, 2019, accident on I-95 in Cecil County, Maryland.   ECF 3, at 2.   A Greyhound bus carrying "many passengers" was allegedly travelling down the highway above the posted speed limit.   *Id.* at 2–3.   An eighteen-wheel tractor trailer owned and operated by JOT "attempted, without proper warning, to make an unsafe and illegal lane change" into the path of the bus.   *Id.* at 3.   The bus swerved to avoid a collision with the JOT tractor trailer and left the roadway.   *Id.*   Passengers were "forcefully thrown or propelled" from their seats onto the ground and/or struck the interior portions of the bus with great force."   *Id.*

In late 2020, Plaintiff Laura Holman ("Holman") sued Greyhound Lines, Inc. ("Greyhound") and JOT in the Circuit Court for Cecil County, Maryland, seeking damages resulting from the accident. *Id.* at 3–7. Holman, a resident of New York, alleged negligence on the part of both defendants and demanded an amount greater than $75,000 in damages. *Id.* On January 13, 2021, Greyhound removed the action to federal court alleging diversity jurisdiction. ECF 1. On March 8, 2021, Greyhound filed a crossclaim against JOT seeking contribution and indemnity. ECF 20. On March 19, 2021, JOT responded with crossclaims of its own against Greyhound. ECF 24. All parties timely responded, and discovery began.

On May 3, 2021, Intervenor Andrea Woodley ("Woodley"), who, like Holman, was a passenger on the bus involved in the accident, filed suit against Greyhound in the District Court for Cecil County, Maryland. ECF 75-4 (docket sheet for Cecil County District Court Case No. D-032-cv-21-7952). Woodley retained attorney Edward Griffin, Esq., in the state case, who, along with Joshua Whitaker, Esq., represents Intervenors in the instant matter. *Id.* While the Court has not reviewed the pleadings in the Cecil County case, JOT alleges, and Intervenors do not deny, that the state lawsuit raised a claim related to the May 23, 2019, bus accident. ECF 75-1, at 8; ECF 76, at 2. That case was dismissed voluntarily by Woodley on August 1, 2021. ECF 75-4. It was apparently never re-filed.

In late 2021, a settlement conference was held in this federal case before another Magistrate Judge of this Court. ECF 36. While this conference was not successful, Greyhound and Holman ultimately settled on their own. ECF 49. This settlement generated substantial litigation and ultimately resulted in all claims involving Greyhound being dismissed or otherwise adjudicated. ECF 65.

Holman's claims against JOT remain and the case is being aggressively litigated by both sides. Discovery deadlines have been extended four times. *See* ECF 35; ECF 38; ECF 44; ECF 67. Motions related to discovery and a request for sanctions have been adjudicated. ECF 59; ECF 63. As Greyhound, JOT, and Holman all acknowledged in prior filings, the discovery process in this case has been expensive. ECF 55-2 (noting that as of December of 2021, a significant number of fact and expert depositions were scheduled to occur). Indeed, Greyhound acknowledged that its settlement with Holman was primarily motivated by a need to control mounting litigation costs. ECF 59, at 3.

On August 5, 2022, nearly two years after the federal case began, Intervenors filed the Motion and now seek to add their own claims against JOT. ECF 71.[1] Intervenors allege that they were passengers on the same bus as Holman and were injured in the May 23, 2019, accident. ECF 71-3, at 3. Intervenors seek leave to intervene in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure and to file a proposed Intervenor Complaint alleging negligence on the part of JOT. ECF 71-1, at 5. JOT opposes the Motion. ECF 75. Plaintiff Holman has not weighed in on the issue.

## II.     Analysis

Rule 24(a) details the requirements for "intervention of right" and states that "[o]n timely motion, the court must permit" intervention if the intervenor either "(1) is given an unconditional right to intervene by a federal statute" or "(2) claims an interest relating to the property or

---

[1] Intervenors note in the Motion that they "are in the process of resolving their matters with Greyhound Lines, Inc." ECF 71, at 2. This is likely a reference to the fact that on August 5, 2022, Woodley, along with other Intervenors, filed suit against Greyhound in the Circuit Court for Baltimore City. *See* Baltimore City Circuit Court Case No. 24-C-22003436. Counsel in that matter is listed as Joshua Whitaker, Esq., who represents Intervenors here. The status of that state case is unknown.

transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a).

Rule 24(b) governs "permissive intervention," and states that "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that share with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1).  In determining whether permissive intervention is proper, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  This Court possesses "substantial discretion to deny permissive intervention."  *Shaw v. Hunt*, 154 F.3d 161, 168 (4th Cir. 1998).

Intervenors claim that intervention is proper under both Rules 24(a) and 24(b), (ECF 71, at 3), and Intervenors and JOT make efforts in their respective filings to address all the factors included in Rules 24(a) and 24(b).  ECF 75; ECF 76.  However, the Court finds that an exhaustive analysis of both rules is unnecessary.  Though the parties are correct that numerous factors must be satisfied under either Rule 24(a) or 24(b), both share a common element: a motion to intervene must be "timely."  Fed. R. Civ. P. 24(a), (b)(1); *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) ("[T]imeliness is a 'cardinal consideration' of whether to permit intervention."); *In re Cigar Ass'n of Am.*, 812 F. App'x 128, 137 (4th Cir. 2020) ("Thus, a movant's failure to seek intervention in a timely manner is sufficient to justify denial of a motion to intervene.").  Since the Court deems the Intervenors' request to be untimely, the Motion is denied.

"The determination of timeliness is committed to the sound discretion of the trial court . . . ." *Alt v. EPA*, 758 F.3d 588, 591 (4th Cir. 2014) (citing *NAACP v. New York*, 413 U.S. 345, 365–66 (1973)); *see also Houston Gen. Ins. Co.*, 193 F.3d at 839.  "Indeed," as the *Alt* Court

affirmed, "a court's discretion in this regard is 'wide.'"  *Id.* (quoting *Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989)).

In assessing timeliness under Rule 24, the Court must review three factors: "[1] how far the suit has progressed, [2] the prejudice which delay might cause other parties, and [3] the reason for the tardiness in moving to intervene." *Gould*, 883 F.2d at 286.  The "most important consideration (in passing on an application for intervention) is whether the delay has prejudiced the other parties." *Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982) (citing *Spring Constr. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980)).  After a careful application of these relevant factors, the Court concludes that the Motion should be denied.

Intervenors filed the Motion over three years after the bus accident at the heart of the case, over eighteen months after Holman filed her claims, and nearly a year after at least one Intervenor had retained counsel and initially pursued litigation in state court.  At the point at which Intervenors claim that they first "knew something of the JOT role in the accident" in "late March, 2022," (ECF 76, at 2), the federal litigation had markedly progressed.  Putting aside whether Intervenors' assertion is plausible given that prior filings in this case make it clear that the JOT tractor trailer's alleged involvement in the accident was likely known to bus passengers (including Intervenors) on the day of the accident, Intervenors nonetheless failed to act for over five months.  It is only after the Court resolved numerous motions, discovery was nearly concluded, and after a settlement between Holman and one party (Greyhound) was reached that Intervenors chose to even try to enter the case.  This delay weighs strongly in favor of denying the Motion.  *See Hisp. Nat'l L. Enf't Ass'n NCR v. Prince George's Cnty.*, Civ. No. TDC-18-3821, 2022 WL 980176, at *4 (D. Md. Mar. 31, 2022) (denying a motion to intervene when a case had been pending for "over the past

three years, the Court has resolved two Motions to Dismiss and two Motions to Intervene filed by other parties, and the parties conducted extensive discovery for over two years").

Both parties stress that "[t]he purpose of the [timeliness] requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001), *rev'd on other grounds*, *Devlin v. Scardelletti*, 536 U.S. 1 (2002). Intervenors argue that the "terminal" can only be interpreted to mean a scheduled trial or a hearing on dispositive motions.  ECF 71, at 4.  However, "the point to which [a] suit has progressed is . . . not solely dispositive," as "[t]imeliness is to be determined from all the circumstances." *NAACP*, 413 U.S. at 365–66.  And as Judge Chuang recently noted, "'[t]he most important circumstance relating to timeliness' is whether the intervening party seeks to intervene 'as soon as it became clear' that its interests 'would no longer be protected by the parties in the case.'" *Hisp. Nat'l L. Enf't Ass'n NCR*, 2022 WL 980176, at *4 (quoting *Cameron v. EMW Women's Surgical Ctr. P.S.C.*, 142 S. Ct. 1002, 1012 (2022)).  There is little in this record supporting the argument that Intervenors sought to intervene "as soon as it became clear" that their interests were not protected by JOT or Holman.

Intervenors point to no recent changes in the positions of the current parties—and the Court can find none on its own—that might explain why Intervenors waited some twenty months after the case began to file their request.  In fact, Intervenors candidly acknowledge that their unique interests were never wholly protected by the parties to this litigation at all.  *See* ECF 76, at 3 ("But liability is not the ultimate goal; the Intervenors seek to be allowed to put on proof of their individual damages, interests that are not in fact protected by Plaintiff Holman's prosecution of her claims.").  Regardless, whatever shared interest Intervenors have with the existing parties remains the same today as it did on the day the suit was removed to this Court, and thus Intervenors

did not seek to "intervene 'as soon as it became clear' that [their] interests 'would no longer be protected by the parties in the case.'" *Hisp. Nat'l L. Enf't Ass'n NCR*, 2022 WL 980176, at *4.

As to the prejudice late intervention would cause to the parties, JOT repeatedly stresses that the Motion comes "almost two years" after the case was filed. ECF 75-1, at 3–6. "Mere passage of time is but one factor to be considered in light of all the circumstances." *Spring Const. Co.*, 614 F.2d at 377 (citing *Atkins v. State Bd. of Educ.*, 418 F.2d 874 (4th Cir. 1969)). However, JOT bases its opposition on more than simply counting the days on a calendar. JOT correctly notes that it has already expended significant effort litigating Holman's case, including conducting the depositions of several fact witnesses and experts. ECF 75-1, at 3, 8. JOT also explains that the investigation of five new claims, additional depositions, and the review of additional discovery will necessitate a lengthy disruption to the Court's Scheduling Order. *Id.* at 7 ("[JOT] would have to engage in entirely new investigation of these claims, which would take many more months – not weeks as the [Intervenors] suggest. In short, to impose this impossible requirement on any party would surely amount to an insurmountable degree of prejudice to all existing Parties."). The Court agrees.

"The delay caused by substantial additional litigation can demonstrate prejudice to existing parties." *Scott v. Bond*, 734 F. App'x 188, 192 (4th Cir. 2018) (citing *Gould*, 883 F.2d at 286–87). Discovery has been ongoing since early 2021 and has largely been focused on the losses and injuries sustained by Holman. Though the Court appreciates Intervenors' offer to "conduct discovery in a 'truncated manner'" (ECF 71, at 4), this concession is unlikely to be accepted by JOT since JOT would necessarily require disclosures and depositions to explore Intervenors'

allegations of "soft tissue damage and other proximate harms." ECF 76, at 4.[2] The additional delay will impact Holman, who will suffer through an even longer wait for the trial she demanded almost two years ago. Finally, the delay frustrates the Court's efforts to resolve this case, particularly after granting a final extension to existing deadlines that it intends to strictly enforce. Stated differently, the Court has "its finger on the pulse of the[se] proceedings" and finds that Intervenors' proposal to truncate or modify discovery to be "too little, and too late." *Alt*, 758 F.3d at 591.

Finally, "a movant seeking intervention must provide a plausible justification for a tardy motion to intervene." *Scott*, 734 F. App'x at 192 (citing *Alt*, 758 F.3d at 591). Intervenors offer no serious justification for their delay. ECF 71, at 1–4. Instead, Intervenors only note that they "retained Maryland counsel earlier this year" and "became aware of this [federal] matter through a recent Google search." *Id.* at 2. This lack of diligence cannot justify the delay. Intervenors also seek to excuse their delay by noting that they "notified [JOT] of the existence of claims on or about March 25, 2022, through certified notice to their resident agent in the State of Maryland." *Id.* JOT disputes this claim. ECF 75-1, at 7. Regardless of when or whether[3] this occurred, it is clear that as of "late March, 2022," Intervenors were aware that the May 2019 accident had happened (they were, after all, passengers on the bus), that Holman was represented by counsel (and likely

---

[2] If Holman's case can serve as a guide, there may be a need for the review of "complex and numerous" medical records. ECF 34-1, at 2. Holman also previously "intimated" that she utilized "the services of at least five (5) expert witnesses (orthopedic, neuro-psychologist, neurologist, vocational rehab/life care planner and economist)." *Id.* at 3. While no two claims are alike (or, more accurately, no six claims), a lengthy delay in this matter is inevitable if the Motion is granted.

[3] Intervenors allege that they mailed a copy of the complaint to JOT's "process agent in the State of Maryland." ECF 76, at 2. JOT denies having a "registered agent in Maryland" and denies receiving notice of Intervenors' claims prior to the filing of the Motion. ECF 75-1, at 7–8.

pursuing her own claims related to the accident), and at least one Intervenor (Woodley) had filed—and then voluntarily dismissed—a lawsuit[4] against Greyhound alleging that its negligence caused the accident.  ECF 76, at 2–3.  Though Intervenors had apparently completed a preliminary investigation and drafted a complaint against JOT by March 25, 2022, Intervenors offer no excuse for why they decided not to file it as its own case or why they did not seek to intervene in Holman's lawsuit at that time.[5]  ECF 76-3, at 1.  While this decision was unquestionably Intervenors' choice to make, "[s]uch deliberate forbearance understandably engenders little sympathy."  *Alt*, 758 F.3d at 591.  There is no reasonable justification offered for the delay.

Intervenors' claim that their interests will never be protected if they are not allowed to intervene because the "the statute of limitations [for their claims] has already tolled" (ECF 76, at 3) raises a slightly different issue.  This is an unfortunate malady of their own making.  Intervenors admit that they failed to pursue litigation against JOT within the applicable statute of limitations.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."); ECF 71, at 2 ("The statute of limitations has otherwise tolled.").  Unfortunately for Intervenors, the failure to timely file their own lawsuit does not justify untimely intervention in this one.

---

[4] It must be noted that this lawsuit was filed by the same counsel who represents Intervenors here and then voluntarily dismissed in 2021.  Thus, Intervenors' original claim that "each [Intervenor] retained Maryland counsel earlier *this* year" (ECF 71, at 2 (emphasis added)), was not accurate, at least as to Woodley.  Intervenors later corrected this error and acknowledge in a subsequent filing that Woodley retained counsel prior to 2022.  ECF 76, at 2.

[5] The Court expresses no view on whether a Motion to Intervene at that stage of the litigation would have been successful.

Intervenors cite no cases justifying intervention on the ground that an intervenor's claim would otherwise be barred by the statute of limitations.  This is likely because Rule 24 does not exist to provide a lifeline to potential plaintiffs who allow viable claims to expire.  *See Ceribelli v. Elghanayan*, No. 91 CIV. 3337 (CSH), 1994 WL 529853, at *2 (S.D.N.Y. Sept. 28, 1994) ("There is nothing in the purpose of [Rule 24] which would countenance a situation in which claims, otherwise time-barred, could be resuscitated simply by virtue of the existence of another timely filed lawsuit with common questions of law or fact.  Such a result would serve only to frustrate the 'salutary purpose [of the statute of limitations] to set stale claims at rest.'") (quoting *Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir. 1956)); *see also Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 213 (4th Cir. 2006) ("Because the would-be plaintiffs' claims expired before August 2004 when they filed their motion for reconsideration—which we have treated as a motion to intervene under Rule 24(b)—the district court did not abuse its discretion in refusing to grant the motion."); *EEOC v. Domino's Pizza, Inc.*, 870 F. Supp. 655, 657 (D. Md. 1994) ("The Court is not prepared to accept a general rule that an intervenor seeking to add new claims, that are time-barred by the applicable statute of limitations, may do so under the relation back doctrine.").  While it is clear that JOT may have a valid statute of limitations defense to Intervenors' claims, the Court declines to conclusively rule on this issue on the present record and does not deny Intervenors' request on that basis alone.[6]  However, the Court credits Intervenors' concession that the Motion

---

[6] The Court likely could engage in a full statute of limitations analysis at this stage.  "Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, *see* Fed. R. Civ. P. 8(c), and the burden of establishing the affirmative defense rests on the defendant."  *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (citing *Newell v. Richards*, 594 A.2d 1152, 1156 (Md. 1991)).  However, the Fourth Circuit has recognized that there are "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint," and thus can be addressed at the early stages of litigation.  *Id.*  The date Intervenors' actions accrued (May 23, 2019) appears on the face of their complaint.  ECF 71-1, at 3.  Intervenors did not seek to intervene until August 5, 2022, some three years and two months

is motivated by Intervenors' belief that their claims are otherwise time-barred and finds that this justification fails to mitigate Intervenors' tardiness.   *See Gould*, 883 F.2d at 286.

### III.   Conclusion

For the reasons noted above, Intervenors' Motion to Intervene, ECF 71, is **DENIED**.   A separate order will issue.

Dated: <u>September 20, 2022</u>                 <u>      /s/       </u>
                                                    Brendan A. Hurson
                                                      United States Magistrate Judge

---

later.  *Id.* at 1.  Most significant, Intervenors admit that their claims are time-barred.  ECF 76, at 3.  Thus, while the Court likely could reach the merits of a statute of limitations defense at this early stage, it declines to do so since the Motion is untimely under the traditional Rule 24 analysis.  *See Gould*, 883 F.2d at 286.